1

2

3

4                    UNITED STATES DISTRICT COURT

5                  NORTHERN DISTRICT OF CALIFORNIA

6

7    AMERICAN SMALL BUSINESS                Case No. 20-cv-07126-DMR
     LEAGUE,
8
                  Plaintiff,               **ORDER ON CROSS MOTIONS FOR
9                                          SUMMARY JUDGMENT**
            v.
10                                         Re: Dkt. Nos. 43, 48
     UNITED STATES OFFICE OF
11   MANAGEMENT AND BUDGET,

12                Defendant.

13          Plaintiff American Small Business League ("ASBL") filed this action for declaratory and

14   injunctive relief pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, against

15   Defendant United States Office of Management and Budget ("OMB").  The parties filed cross

16   motions for summary judgment.  [Docket Nos. 43, 48.]  This matter is suitable for resolution

17   without a hearing.  Civ. L.R. 7-1(b).  For the following reasons, OMB's motion is granted.

18   ASBL's motion is denied.

19   **I.     BACKGROUND**

20          The following facts are undisputed unless otherwise noted.  ASBL is an organization "that

21   focuses on promoting the interests of small businesses and educating the public about government

22   operations."  [Docket No. 48-1 (Chapman Decl., Feb. 10, 2022) ¶ 2.]  ASBL uses information

23   obtained via FOIA requests "to investigate the effectiveness of government programs intended to

24   help small businesses, specifically the Small Business Act requirement that 23 percent of all

25   federal contracting dollars must go to small businesses, five percent of which must be allocated to

26   contracts with women-owned businesses."  *Id.*  It distributes the information it obtains through

27   press releases, news articles and op-eds, television appearances, and podcasts.  *Id.*

28          OMB "oversees the implementation of the President's vision across the Executive

United States District Court
Northern District of California

Branch."  https://www.whitehouse.gov/omb/ (last visited Sept. 9, 2022).  That end, OMB "oversees the development of the President's Budget request; preparation of the budget database supporting this request; development of OMB's budget formulation and execution guidance . . .; and implementation of the federal budget."  [Docket No. 44 (Rowe Decl., Jan. 6, 2022) ¶ 2.]

### A.    ASBL's FOIA Request & OMB's Initial Search for Responsive Documents

On April 7, 2020, ASBL submitted the following request for information from OMB pursuant to FOIA: "Any and all documents indicating or containing the total federal acquisition budget for FY 2017, FY 2018, and FY 2019."  [Docket No. 48-3 (Lee Decl., Feb. 10, 2022) ¶ 2, Ex. A (FOIA Request).]  The following day, OMB acknowledged receipt of the request and assigned it request number 2020-319.  [Docket No. 45 (Walsh Decl., Jan. 6, 2022) ¶ 6, Ex. 2.]

Heather Walsh, Deputy General Counsel in OMB's Office of the General Counsel ("OGC"), submitted a declaration in which she describes the steps OMB took to search for records responsive to ASBL's request.  Walsh states that "[g]iven the targeted nature" of the request, OGC staff began the search by conducting a "custodial inquiry," which "involves directly reaching out to an individual or group of individuals within the agency who are reasonably likely to know whether the information exists and where it can be located."  Walsh Decl. ¶ 8.  Walsh's staff contacted subject matter experts in two divisions of OMB: the Office of Federal Procurement Policy and the Budget Review Division.  The Office of Federal Procurement Policy OFPP is responsible for "providing overall direction for government-wide procurement policies, regulations and procedures," and the Budget Review Division is responsible for "managing the production of the President's budget."  *Id*.; Rowe Decl. ¶ 10.  OGC staff provided ASBL's request to career federal employees in those divisions, some of whom have decades of experience at OMB.  Those employees concluded that "the total federal acquisition budget" for fiscal years 2017, 2018, and 2019 "is not the type of data that exists at OMB as such information is neither collected, tracked, nor maintained by the agency in the normal course of business."  Walsh Decl. ¶¶ 9, 10; Rowe Decl. ¶ 4.

David Rowe, OMB's Deputy Assistant Director for Budget, states that he has worked at OMB since 1997 and that he is "familiar with the federal budget process and the information

2

United States District Court
Northern District of California

OMB collects to prepare the President's Budget request."  Rowe Decl. ¶ 2.  He confirms that OGC consulted with him and his team in the Budget Review Division regarding ASBL's request and states, "OMB does not keep the information [ASBL] requested in its FOIA request."  *Id*. at ¶¶ 5, 7. Rowe states that he recommended that ASBL review the President's Budget containing "information on object class analysis for several object classes associated with acquisition and contracting."  *Id*. at ¶ 5.

Lesley Field, the Acting Administrator and Deputy Administrator for Federal Procurement Policy, who leads OMB's Office of Federal Procurement Policy, states that she has worked at OMB since 2001.  [Docket No. 55 (Field Decl., Mar. 10, 2022) ¶ 1.]  She states that she is "familiar with the procurement data collection requirements in the Federal Acquisition Regulation (FAR), which is the primary regulation used by most executive agencies in their acquisition of supplies and services with appropriated funds, and also the Federal Procurement Data System." *Id*. at ¶ 3.  Field states that she is aware of ASBL's FOIA request and that Field's "team [in the Office of Federal Procurement Policy] was not aware of any records OMB maintained in its custody related to the total Federal acquisition budget," and that as part of the search process, OGC consulted with the team "to identify any publicly available information that could be of assistance to" ASBL.  *Id*. at ¶¶ 5-7.

OMB responded to ASBL on June 9, 2020.  It wrote that "there is no specific total Federal acquisition budget each year.  Therefore, OMB has no records responsive to your FOIA request." Lee Decl. ¶ 3, Ex. B.  It continued, "[w]e recommend you review the President's Budget, a public document, which contains information on object class analysis.  For example, the table from the Fiscal Year 2021 President's Budget can be found at the following link: https://www.whitehouse.gov/wp-content/uploads/2020/02/objclass_fy21.pdf.  The summary includes several object classes associated with acquisition and contracting."  *Id*.[1]

ASBL's counsel sent three emails to OMB after receiving the June 9, 2020 response to the

---

[1] According to Walsh, "object classes" are "categories in a classification system that presents obligations by the items or services purchased by the Federal Government."  Walsh Decl. ¶ 11 (citation omitted); *see also* Rowe Decl. ¶¶ 12-14.

FOIA request.  First, on June 9, 2020, ASBL's counsel emailed OMB with what she described as a "clarif[ication]" of the request: "we are seeking any and all documents indicating the acquisition budget for the Department of Defense (DoD) for Fiscal Year (FY) 2017, FY 2018, and FY 2019, as well as any and all documents indicating the percentage of the DOD's acquisition budget which goes to small businesses."  Lee Decl. ¶ 4, Ex. C.  ASBL's counsel sent a second email to OMB on June 10, 2020, writing "we find it impossible to believe that there are no documents showing the total federal acquisition budget, and we demand such documents."  *Id.*  OMB responded to the two emails by noting that it had closed request number 2020-319 and that ASBL could submit a new FOIA request or appeal OMB's response to 2020-319.  *Id.*  ASBL's counsel sent a third email to OMB on June 11, 2020 again challenging its response to the request.  Counsel stated that the document referenced in OMB's response (the President's Budget) was not responsive to the request, since it "states the proposed budgets for FY 2020 and FY 2021, neither of which pertain to the actual budgets that we had previously requested."  *Id.*  Counsel requested "any and all records that are responsive to this request."  *Id.*

Walsh states that her staff shared ASBL's communications with the subject matter experts in the Office of Federal Procurement Policy and the Budget Review Division "to solicit their advice and guidance" before responding to ASBL.  Walsh Decl. ¶ 15.  Rowe recommended that ASBL check information on "USAspending.gov and the Federal Procurement Data System for total dollars obligated on federal contracts."  Rowe Decl. ¶ 6.  On June 12, 2020, OMB responded to ASBL's counsel, reiterating that "OMB has no responsive records because there is not a 'total federal acquisition budget' in any of the fiscal years" requested and describing additional sources of publicly available information that could be of assistance:

> To assist you, we shared a link to a table in the President's recent budget that may be helpful.  This table should be publicly available for each of the fiscal years [requested].  While the direct link we provided was to the most recent President's budget, the actual budget information you are requesting can be found by referencing this same table for prior years.  This may require you to review the President's Budget proposals for prior years as well.  To reiterate, however, with regard to the specific information you sought in your FOIA request, there is not a separate federal budget for acquisition.  If you are seeking total dollars obligated on federal contracts, this information is available publicly on USAspending.gov or the Federal Procurement

4

1    Data System.

2    Walsh Decl. ¶ 15, Ex. 6.

3        On June 19, 2020, ASBL's counsel sent OMB a letter stating that ASBL had examined the

4    sources of publicly available information provided by OMB and concluded that "none of them are

5    responsive to our original request."  Walsh Decl. ¶ 16, Ex. 7.  As to the President's budget

6    proposals, counsel wrote, "we do not believe that this is what we are seeking because the numbers

7    are too low . . . considering what we already know about federal government spending."  *Id*.  As to

8    USAspending.gov and the Federal Procurement Data System, counsel wrote that "it is nearly

9    impossible to determine the total federal acquisition budget from the data provided" given the

10   volume of data (26,000 results on USAspending.gov and 10 million contracts in the Federal

11   Procurement Data System).  Counsel reiterated that they "find it impossible to believe that there

12   are no documents indicating the total federal acquisition budget."  *Id*.

13       On July 17, 2020, ASBL filed an administrative appeal of OMB's June 9, 2020 response

14   asking "OMB [to] reverse its denial of ASBL's FOIA request."  It stated that "it is highly unlikely

15   that the federal government does not have records of its total acquisition budget, given that the

16   federal government spends trillions of dollars per year," including a reported $4.45 trillion in fiscal

17   year 2019, and that it has "extensive records of its total spending" and "numerous records of

18   money obligated on federal contracts."  Walsh ¶ 17, Ex. 8.

19       ASBL filed the complaint on October 13, 2020, alleging FOIA violations by OMB as well

20   as by a separate federal agency, the United States Small Business Administration ("SBA").  On

21   April 21, 2021, the court severed ASBL's claims against SBA after finding that the FOIA requests

22   against the two agencies were unrelated.  [Docket No. 21.]  ASBL's complaint against OMB

23   alleges that the agency failed to provide a determination on the administrative appeal, resulting in

24   constructive denial of the appeal.  Compl. ¶ 48.  It further alleges that "OMB must have records

25   that show the total federal acquisition budget for each fiscal year, the OMB has not conducted a

26   diligent search for such records, and the agency has prematurely claimed that no such records

27   exist" in violation of FOIA.  *Id*. at ¶ 50.

28

United States District Court
Northern District of California

**B.    OMB's Electronic Search for Responsive Documents and the Parties'
Subsequent Communications**

In March 2021, OMB for the first time conducted an electronic search for documents responsive to ASBL's FOIA request.  According to Walsh, the purpose of this "supplemental search was to ensure that there were no responsive records of which our subject-matter experts may not have been aware."  Walsh Decl. ¶ 18.  OMB searched for documents from January 20, 2017 through May 1, 2020, which covered fiscal years 2017 through 2019.  OMB searched the email communications and workfolders of all individuals at OMB during the relevant timeframe for the following search term: "Federal Acquisition Budget."  *Id*. at ¶ 19.  The search returned 13 potentially responsive records; following a review, OMB determined that none of them were responsive to ASBL's FOIA request.  *Id*. at ¶ 20.

After OMB conducted an electronic search, the parties engaged in additional correspondence about OMB's role in the budgeting process, sources of publicly available information potentially related to the FOIA request, and ASBL's explanations of the information it was seeking.  First, Defense counsel sent an email to ASBL's counsel on March 12, 2021 explaining the bases for OMB's position that "OMB simply does not create or produce the documents the FOIA request seeks."  [Docket No. 46 (Brakebill Decl., Jan. 6, 2022) ¶ 2, Ex. 1.] This included a brief overview of the budgeting process and the information that federal agencies submit to OMB as part of that process.  Counsel also wrote that the term "'total federal acquisitions budget' is neither a term of art used within OMB, nor does it have any specific meaning to OMB."  *Id*.  Counsel provided hyperlinks for OMB's Object Class Analyses for the fiscal years at issue, explaining that "[w]hile OMB previously noted that this volume is not completely responsive to the FOIA request because the Object Class Analysis does not provide government-wide or agency sum totals of particular classes of spending that would constitute an 'acquisition budget,' these documents do show the spending amounts for programs at each federal agency listed in standardized classes of spending by their objective ('object classes')."  *Id*.; *see* Rowe Decl. ¶ 28 ("[t]hese Object Class Analyses show the total obligations the Federal government has incurred by the nature of the object or service across the Federal government, by Agency, and by object class.").  Counsel also noted that "USAspending.gov includes a standard

United States District Court
Northern District of California

1   report that allows users to see contract spending by fiscal year" and provided a link to the

2   interactive report interface.  Brakebill Decl. Ex. 1.

3          As to ASBL's previous request for DoD-specific budget information, defense counsel

4   attached the agency's scorecards, published by the SBA, that "assess[ ] how well federal agencies

5   reach their small business and socio-economic prime contracting and subcontracting goals,

6   including goals for small business."  *Id*.  He also provided a link to obtain scorecards specific to

7   the DoD.  *Id*.

8          ASBL's counsel responded in a letter to defense counsel on March 15, 2021.  He noted

9   that he had reviewed the suggested sources of publicly available information set forth in the March

10  12, 2021 email and stated, "[i]n general, we find that these sources are not responsive" to ASBL's

11  FOIA request "as they relate to *acquisition spending* rather than *acquisition budgets*."  Brakebill

12  Decl. ¶ 3, Ex. 2 (emphasis added).  With respect to the Object Class Analyses, counsel noted that

13  the documents "do indicate a budget for the 'acquisition of capital assets,'" but wrote that "these

14  values cannot indicate the actual values of the total federal acquisition budget for the fiscal years

15  requested because they are too low, considering what we already know about federal government

16  spending."  Brakebill Decl. ¶ 3, Ex. 2.  Counsel wrote that "it is nearly impossible to determine the

17  total federal acquisition budget from the data" available on USAspending.gov since "there is no

18  reasonable method for a person to" add together all 26,000 results related to spending or

19  acquisition for the relevant years and noted that the data sets obtained from USAspending.gov

20  "reflect actual acquisition spending, not an acquisition budget."  *Id*.  Counsel also noted that the

21  DoD scorecards are not responsive to the FOIA request since they "are presumably based on the

22  DoD's total budget, and not the agency's acquisition budget," so "ASBL cannot possibly

23  determine either the DoD's acquisition budget or the percentage of the DoD's acquisition budget

24  allocated for small businesses."  *Id*.

25         Finally, ASBL's counsel offered another clarification of the FOIA request, albeit with the

26  disclaimer that "we do not concede that clarification is needed."  He wrote, "by 'total federal

27  acquisitions budget,' ASBL was and is referring to 'the total value of all prime contract awards

28  for' each referenced 'fiscal year,' the total figure needed to assess whether the government is

meeting its small business contracting goals under the Small Business Act," citing 15 U.S.C. § 644(g)(1)(A)(i).[2] *Id.* (citation omitted).

ASBL's counsel sent another email to defense counsel on October 7, 2021 which asserted that "acquisition" includes "spending for both goods and services," and that "when ASBL is asking for documents 'indicating or containing the total federal acquisition budget' for the years in question, it is asking for the total federal budget, which the OMB surely has for the fiscal years in question." Brakebill Decl. ¶ 4, Ex. 3. Further, ASBL counsel noted, "in order to determine the budget for each federal agency for each fiscal year . . . OMB must receive spending data from all federal agencies to guide its budgetary decisions for the upcoming fiscal year," and that ASBL believes that "as a result of receiving such data, the data that OMB receives from other agencies regarding its spending is encompassed within our FOIA request . . ." *Id.* Counsel referenced a portion of the President's budget, "an 'Analytical Perspective' consisting of, among other analyses, 'analyses of Federal spending,'" and noted that "OMB must obtain federal spending data from all other agencies" as a result of conducting these analyses. *Id.* Counsel concluded by asserting that "the definition of 'acquisition' includes both spending and allocation data, and this data includes spending for both goods and services . . . 'acquisition' is [not] limited to the procurement of goods . . . acquisition data should include both the procurement of goods and

---

[2] The cited portion of the Small Business Act, 15 U.S.C. § 631 *et seq.*, is part of a subsection entitled, "Goals for participation of small business concerns in procurement contracts." It states:

> The President shall annually establish Governmentwide goals for procurement contracts awarded to small business concerns, small business concerns owned and controlled by service-disabled veterans, qualified HUBZone small business concerns, small business concerns owned and controlled by socially and economically disadvantaged individuals, and small business concerns owned and controlled by women in accordance with the following:
>
> **(i)** The Governmentwide goal for participation by small business concerns shall be established at not less than 23 percent of the total value of all prime contract awards for each fiscal year. In meeting this goal, the Government shall ensure the participation of small business concerns from a wide variety of industries and from a broad spectrum of small business concerns within each industry.

15 U.S.C. § 644(g)(1)(A)(i).

services."

OMB provided a final response on November 9, 2021, asserting that ASBL's original request "sought the 'federal acquisition budget' for three specific fiscal years, but [ASBL's] correspondence suggests that acquisition refers to all spending and that [ASBL] is now more broadly seeking federal spending data across the government."  Brakebill Decl. ¶ 5, Ex. 4.  To the extent that ASBL did in fact seek "federal spending data across the government," OMB counsel wrote that ASBL could find that information "in the Appendix of the President's Budget for the fiscal years in question," but that "OMB does not have any further acquisition records to provide," reiterating that "OMB does not track budgeting and spending beyond the identified Object Classes."  *Id.*  He also identified another source of publicly available information, agency SF 133 Reports on Budget Execution and Budgetary Resources, which provide "actual spending information" that OMB collects.  *Id.*

In apparent reference to the "Analytical Perspective" cited by ASBL, OMB counsel wrote that "the October 22 Joint Report from OMB and Treasury that you reference uses data from the Treasury Department on receipts and outlays and does not show what the money is spent on."  *Id.*

ASBL's counsel responded by email on December 2, 2021.  Counsel wrote that OMB had failed to respond to ASBL's questions, and that "not only does ASBL want to confirm the entire universe of documents, but ASBL also wants to confirm the specific data points that the OMB believes is responsive to its FOIA requests."  Lee Decl. ¶ 15, Ex. L.  Counsel noted that ASBL had provided "a number of sources that it has received from other agencies that it believes is responsive to ASBL's FOIA request," and wrote that ASBL "would like to know which data points led the OMB to believe that the sources were responsive and any specific inputs the OMB used to obtain responsive data."  *Id.*  Counsel further noted that "[a]gency records are not limited to those generated within the OMB, but also include those obtained by the OMB in carrying out its statutory duties."  *Id.*  There is no further correspondence between the parties in the record.

## II.   LEGAL STANDARDS

### A.  Summary Judgment

A court shall grant summary judgment "if . . . there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The burden of establishing the absence of a genuine issue of material fact lies with the moving party. *Devereaux v. Abbey*, 263 F.3d 1070, 1079 (9th Cir. 2001) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  The court must view the evidence in the light most favorable to the non-moving party.  *Fresno Motors, LCC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).  A genuine factual issue exists if sufficient evidence favors the non-movant such that "a reasonable [judge or] jury could return a verdict for the nonmoving party.  *Cline v. Indus. Maint. Eng'g & Contracting Co.*, 200 F.3d 1223, 1229 (9th Cir. 2000) (alteration in original) (quoting *Anderson*, 477 U.S. at 248).  The court may not weigh the evidence, assess the credibility of witnesses, or resolve issues of fact. *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1049 (9th Cir. 2014) (quoting *Anderson*, 477 U.S. at 255).

To defeat summary judgment once the moving party has met its burden, the nonmoving party may not simply rely on the pleadings, but must point to specific facts, by affidavit or as otherwise provided by Federal Rule of Civil Procedure 56, showing that a genuine issue of material fact exists.  *Devereaux*, 263 F.3d at 1076.  More than a "scintilla of evidence" must exist to support the non-moving party's claims.  *Pomona*, 750 F.3d at 1049 (quoting *Anderson*, 477 U.S. at 252).  A showing that "there is some 'metaphysical doubt' as to the material facts as issue" will not suffice.  *In re Oracle Corp. Secs. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial."  *Pomona*, 750 F.3d at 1049-50 (quoting *Matsushita*, 475 U.S. at 587).

Where, as here, the parties have filed cross-motions for summary judgment, "each motion must be considered on its own merits."  *Fair Hous. Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) (quotation omitted).  "In fulfilling its duty to review each cross-motion separately, the court must review the evidence submitted in support of each cross-motion."  *Id.*

### B.     FOIA

"FOIA 'was enacted to facilitate public access to Government documents.'" *Lahr v. Nat'l Transp. Safety Bd.*, 569 F.3d 964, 973 (9th Cir. 2009) (quoting *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991)).  Its "'core purpose' is to inform citizens about 'what their government is up to.'" *Yonemoto v. U.S. Dep't of Veterans Affairs*, 686 F.3d 681, 687 (9th Cir. 2012) (quoting *Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773, 775 (1989)). FOIA cases are typically decided on motions for summary judgment as the facts are rarely in dispute.  *See Minier v. Cent. Intelligence Agency*, 88 F.3d 796, 800 (9th Cir. 1996).  The court reviews de novo an agency's action in response to a FOIA request, and "the burden is on the agency to sustain its action."  5 U.S.C. § 552(a)(4)(B).  "[I]f there are genuine issues of material fact in a FOIA case, the district court should proceed to a bench trial or adversary hearing. Resolution of factual disputes should be through the usual crucible of bench trial or hearing, with evidence subject to scrutiny and witnesses subject to cross-examination." *Animal Legal Def. Fund v. U.S. Food & Drug Admin.*, 836 F.3d 987, 990 (9th Cir. 2016).

## III.    DISCUSSION

OMB asserts that it is entitled to summary judgment on ASBL's FOIA claim because it has fully complied with its obligations under FOIA.  Specifically, it contends that it conducted an adequate search in response to ASBL's FOIA request and "is not improperly withholding responsive documents because OMB does not have documents reflecting the total federal acquisition budget."  Def.'s Mot. 2.

ASBL opposes the motion and argues that it is entitled to summary judgment on the ground that OMB did not conduct an adequate search for responsive records.  It asks the court to order OMB "to conduct a lawful search and disclose all responsive records to ASBL."  Pl.'s Mot. 1.

### A.  Standard for a Reasonable Search

"FOIA requires an agency responding to a request to demonstrate that it has conducted a search reasonably calculated to uncover all relevant documents." *Lahr*, 569 F.3d at 986 (quoting *Zemansky v. EPA*, 767 F.2d 569, 571 (9th Cir. 1985)); 5 U.S.C. § 552(a)(3)(C); *Hamdan v. U.S.*

*Dep't of Justice*, 797 F.3d 759, 770 (9th Cir. 2015) ("In response to a FOIA request, government agencies must conduct a reasonable search to find any documents responsive to the request."). "[U]nder FOIA, agencies bear the burden of demonstrating the adequacy of their search beyond a material doubt." *Transgender L. Ctr. v. Immigr. & Customs Enf't*, 46 F.4th 771, 2022 WL 3592186, at *5 (9th Cir. 2022). "An agency can demonstrate the adequacy of its search through 'reasonably detailed, nonconclusory affidavits submitted in good faith.'" *Id*. (quoting *Hamdan*, 797 F.3d at 770 (quoting *Zemansky*, 767 F.2d at 571)). "The affidavits need not set forth with meticulous documentation the details of an epic search for the requested records, and they are presumed to be in good faith." *Id*. (cleaned up). "Such affidavits or declarations are accorded 'a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents.'" *Lawyers' Comm. for C.R. of San Francisco Bay Area v. U.S. Dep't of the Treasury*, 534 F. Supp. 2d 1126, 1131 (N.D. Cal. 2008) (quoting *SafeCard Servs., Inc. v. S.E.C.*, 926 F.2d 1197, 1200 (D.C. Cir. 1991)). "In evaluating the adequacy of the search, the issue 'is not whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate*.'" *Hamdan*, 797 F.3d at 770-71 (emphasis in original) (quoting *Lahr*, 569 F.3d at 987). "The adequacy of the search, in turn, is judged by a standard of reasonableness and depends . . . upon the facts of each case." *Zemansky*, 767 F.2d at 571 (quotation and citation omitted).

FOIA requesters are "entitled to a reasonable search for records, not a perfect one." *Hamdan*, 797 F.3d at 772. However, "[i]f the record raises substantial doubt as to the reasonableness of the search, especially in light of 'well-defined requests and positive indications of overlooked materials,' then summary judgment may be inappropriate." *Shapiro v. U.S. Dep't of Justice*, 37 F. Supp. 3d 7, 20 (D.D.C. March 12, 2014) (quoting *Founding Church of Scientology of Washington, D.C. v. NSA*, 610 F.2d 824, 837 (D.C. Cir. 1979)); *see also Transgender L. Ctr.*, 46 F.4th at 5 (holding that "summary judgment was inappropriate because [plaintiff] provided the agencies with both 'well-defined requests' and 'positive indications of overlooked materials,' as well as 'leads that emerge[d] during [the agencies'] inquiry.'" (alterations in original)).

**B.**     **OMB's Search for Records**

Before addressing the parties' specific arguments regarding the reasonableness of OMB's search, the court first discusses the steps OMB took to identify responsive documents, as well as Rowe's explanation of the budget process and OMB's role therein as it pertains to the FOIA request.

As discussed above, Walsh states she began the search for responsive documents by conducting a "custodial inquiry" for responsive documents; in Walsh's experience, "custodial inquiries can be very useful in circumstances where the subject matter of the requests are specific in nature and the universe of documents, if in existence, is likely to be maintained by a specific person(s) or office(s) within the agency."  Walsh Decl. ¶ 8.  Her staff contacted what she describes as "subject-matter experts" in the Office of Federal Procurement Policy and the Budget Review Division.  These individuals included Rowe in the Budget Review Division as well as the Associate Administrator and a Procurement Policy Analyst in the Office of Federal Procurement Policy.  According to Walsh, all of the individuals her staff contacted "are career Federal employees with extensive experience and knowledge of OMB and many of whom have decades of government experience at OMB spanning across multiple Presidential Administrations."  *Id.* at ¶ 9.  These individuals concluded that OMB does not have data showing the total federal acquisition budget for fiscal years 2017 through 2019 because it does not collect, track, or maintain that information in the normal course of business.  *Id.* at ¶ 10.

In March 2021, after ASBL filed this lawsuit, OMB conducted an electronic search "to ensure that there were no responsive records of which [the] subject-matter experts may not have been aware."  *Id.* at ¶ 18.  Using the search term "federal acquisition budget," OMB searched for documents from January 20, 2017 through May 1, 2020 in the email communications and work folders of all individuals at OMB during the relevant timeframe.  *Id.* at ¶ 19.  The search did not return any records that were responsive to ASBL's FOIA request.  *Id.* at ¶ 20.

In support of its contention that OMB does not have records responsive to the request, it describes the budget process as follows: federal statutes require the President to submit a budget for the United States government each year that contains certain information.  Specifically, 31

United States District Court
Northern District of California

U.S.C. § 1104 requires the President to submit a budget that "prescribe[s] the contents and order of statements in the budget on expenditures and estimated expenditures and statements on proposed appropriations and information submitted with the budget and proposed appropriations." 31 U.S.C. § 1104(b).  A different statute, 31 U.S.C. § 1105(a), sets forth more than 30 categories of information that must be included in the budget, including "estimated expenditures and receipts, and appropriations and proposed appropriations, of the Government for the current fiscal year." 31 U.S.C. § 1105(a)(8).[3]

Section 1104(b) also requires the President to "include with the budget . . . proposed appropriations information on personnel and other objects of expenditure in the way that information was included in the budget for fiscal year 1950." 31 U.S.C. § 1104(b).  Congress has the authority to waive or change this requirement.  *See id*.  Rowe states that in order to fulfill that requirement, OMB instructs agencies "to present their obligations through" an "object classification system."  Rowe Decl. ¶ 12.  OMB provides this instruction via OMB Circular A-11, entitled "Preparation, Submission, and Execution of the Budget," which "provides instructions to agencies on how to prepare, submit, and execute the President's Budget."  *Id*. at ¶¶ 12, 20; https://www.whitehouse.gov/wp-content/uploads/2018/06/a11.pdf (last visited Sept. 15, 2022).[4] Section 83 of OMB Circular A-11 addresses object classification and defines "object classes" as "categories in a classification system that presents obligations by the items or services purchased by the Federal Government."  *See* https://www.whitehouse.gov/wp-content/uploads/2018/06/s83.pdf (last visited Sept. 15, 2022).  According to that section, there are five "major object classes": 1) personnel compensation and benefits; 2) contractual services and supplies; 3) acquisition of assets; 4) grants and fixed charges; and 5) other.  *Id*. at § 83.1.  Section

---

[3] None of these categories include an "acquisition budget," and ASBL does not assert that any of the categories are the equivalent of or pertain to acquisitions.

[4] Rowe explains that "OMB issues Circulars to communicate various instructions and information to agencies when the nature of the subject matter is of continuing effect for two years or more."  Rowe Decl. ¶ 20.  The other way OMB provides formal instructions to federal agencies is through "Budget Data Requests," which "communicate operational guidance or request specific budget information from OMB and agency staff" and "are used when specific action or a specific product is needed under short deadlines."  *Id*. at ¶ 21.  Rowe states that the Budget Review Division "has not issued instructions on gathering a Federal acquisition budget from agencies."  *Id*. at ¶ 21.

83 states, "you must report object class information because the law (31 U.S.C. 1104(b)) requires the President's Budget to present obligations by object class for each account." *Id*. at § 83.2.  It also states that the object class classification system classifies obligations and provide information about "[g]oods or services or items purchased, for example, supplies, rent, or equipment." *Id*. at § 83.3.

According to Rowe, "[w]hile some of the appropriations that are requested by the President may be used for acquisition, the President's Budget does not specifically request appropriation amounts specifically for acquisition; nor is such a breakdown mandated by law." Rowe Decl. ¶ 16.  Rowe further states that "[b]ecause the total federal acquisition budget is not required to be tracked in the appropriations process, and because OMB does not need it for budget formulation purposes, OMB Circular A-11 . . . does not define Federal acquisition."  As a result, he states, "OMB does not collect agency federal acquisition budget information." *Id*. at ¶ 17. Rowe notes that two of the five major object classes "capture information relating to acquisitions: contractual services and supplies; and acquisition of assets."  However, he explains, "those two categories are broader than the total Federal acquisition budget and therefore are not a proxy for the total federal acquisition budget," since "[t]he object classes present obligations according to their initial purpose, not the end product or service." *Id*. at ¶¶ 17, 18.  For example, Section 83 provides the following guidance on object classification: "[i]f you purchase a building, classify the contractual obligations under Acquisition of assets," but "if you pay a Federal employee who constructs a building, classify the obligations for the employee's wages under Personnel compensation and benefits, rather than Acquisition of assets."  § 83.1 (emphasis removed).[5]

For the process of managing the production of the President's budget, the Budget Review Division "collects and compiles requests from [federal] agencies for funding" using a specific

---

[5] Section 83 provides that "[w]e divide these major classes into smaller classes and present them in the Budget Appendix in object class schedules."  Section 83 at § 83.1.  The object class "Acquisition of assets" encompasses purchase of equipment, purchase and improvement of land and structures, and purchase of investments and loans. *Id*. at pp. 18-20.  The object class "Contractual services and supplies" includes travel and transportation of persons; transportation of things; rent, communications, and utilities; printing and reproduction; and supplies and materials. *Id*. at pp. 10-18.

application, the MAX A-11 Data Entry ("MAX A-11 DE") application.  Rowe Decl. ¶ 22; *see* https://www.whitehouse.gov/wp-content/uploads/2018/06/s79.pdf (last visited Sept. 15, 2022). According to Rowe, "[w]hen agencies provide their budget requests to OMB, they propose broad policies and strategies and also request total discretionary and mandatory budgetary resources," and "break down their budget requests by budget schedules" in MAX A-11 DE.  Rowe Decl. ¶ 23; *see* https://www.whitehouse.gov/wp-content/uploads/2018/06/s79.pdf at 8.  Agencies enter object class information in Schedule O, "Object Classification."  *Id*.; *see also* Section 83 at § 83.17.

Rowe states "[t]here is no term within OMB called 'total Federal acquisition budget,' nor is it a category of information that OMB tracks."  According to Rowe, since "Congress has not mandated or . . . instructed OMB to require agencies to submit their budget requests by total Federal acquisition . . . the federal agencies from which OMB solicits appropriations requests each fiscal year do not break down their request by acquisitions data," other than the object class information described above.  Rowe Decl. ¶ 25.  Specifically, "[t]he budgeting process only tracks the acquisition information covered by the current object classes."  *Id*. at ¶ 24.  "OMB provided [ASBL] with this information for the relevant years" in response to its FOIA request.  Rowe Decl. ¶ 24; Walsh Decl. Ex. 5 (providing link to FY 2021 object class analysis), Ex. 6 (explaining how to access the same information for FY 2017-FY 2019).  Rowe acknowledges that the object class analyses "may not be completely responsive to the FOIA request in the sense that the Object Class Analysis does not comprehensively track all acquisition-related spending categories," but states "these documents do show the actual and anticipated spending amounts for some acquisition-related categories at each Federal agency."  Rowe Decl. ¶ 26.

In the course of the parties' communications about the FOIA request, OMB identified additional sources of publicly available information, including USAspending.gov; the Federal Procurement Data System; the Small Business Administration's scorecards for the DoD; the Appendix of the President's budget; and agency SF 133 Reports on Budget Execution and Budgetary Resources.  *See* Walsh Decl. Ex. 6; Brakebill Decl. Exs. 1, 4.

## C.     The Adequacy of OMB's Search

ASBL does not dispute the applicable legal standard or that an agency can satisfy its

16

United States District Court
Northern District of California

1    burden regarding the adequacy of a search for responsive documents through detailed,

2    nonconclusory affidavits.  It acknowledges that agency affidavits are presumed to be in good faith.

3    Pl.'s Mot. 6.  Additionally, ASBL also does not dispute certain key assertions in OMB's

4    declarations regarding ASBL's FOIA request.  Specifically, ASBL does not dispute the budget

5    process as set forth in OMB's opening brief and Rowe's declaration, including that there is no

6    requirement for the President's budget to report a "federal acquisition budget"; that federal

7    agencies "present their obligations" through an object classification system; that there are five

8    major object classes by which agencies report their obligations, two of which OMB contends

9    capture information related to acquisitions, i.e. contractual services and supplies and acquisition of

10   assets; and that those two object classes "are not a proxy for the total federal acquisition budget."

11   *See* Rowe Decl. ¶¶ 11-19.[6]  ASBL also does not dispute that the budgeting process tracks only the

12   acquisition information covered by the existing object classes; that agencies do not break down

13   their budget requests by "acquisitions data" other than what is captured in the object classes; or

14   that OMB provided ASBL with object class analyses for the relevant years.  *See id*. at ¶¶ 23-25.[7]

15        Instead, ASBL maintains that OMB failed to perform an adequate search in response to its

16   FOIA request because it construed the term "total federal acquisition budget" too narrowly.  It

17   argues that OMB "has been unwilling to accept ASBL's interpretations of the terms 'total federal

18   acquisition budget' and 'acquisition'" and unwilling to conduct searches to include these

19   definitions.  Pl.'s Mot. 7-8.  According to ASBL, OMB failed to work with ASBL to "help ASBL

20   reasonably describe records" and determine alternative search terms.  *Id*. at 14-15.

21        ASBL's argument essentially rests on its contentions about how OMB should have

22

23   [6] ASBL also appears to argue that a third object class, "Grants and fixed charges," pertains to
     acquisitions.  *See* Pl.'s Mot. 12.  Whether it does or not is of no moment, as ASBL does not

24   contend that OMB failed to provide it with any specific object class analyses for the relevant
     years.

25   [7] In its reply, ASBL contends that it "has disputed the qualifications of the purported subject

26   matter experts referenced by OMB . . . [and] continues to dispute whether or not these purported
     'subject matter experts' were qualified to conduct the custodial search."  Pl.'s Reply 11.  In fact,

27   ASBL's opening brief did not contain any specific challenges to these individuals' qualifications,
     merely describing them in a conclusory manner as "so-called subject-matter experts."  *See* Pl.'s

28   Mot. 7.  ASBL does not flesh out its objections to the individuals' qualifications in its reply.

United States District Court
Northern District of California

1  interpreted its FOIA request.  However, as discussed below, the record demonstrates that ASBL

2  took and continues to take shifting positions about the scope of its original request.

3      ASBL's FOIA request asked for records on a specific topic: "Any and all documents

4  indicating or containing the *total federal acquisition budget* for FY 2017, FY 2018, and FY 2019."

5  OMB argues that the term "budget" is "foundational," and has a commonly accepted dictionary

6  definition: for example, "[a]n itemized summary of estimated or intended expenditures for a given

7  period." Def.'s Opp'n 6 (quoting Am. Heritage Dictionary 241 (5th ed. 2016)). According to

8  OMB, "the word 'budget' refers to an estimate of expenditures for a finite period of time," and

9  that this definition is consistent with the use of the term in 31 U.S.C. §§ 1104 and 1105, the

10  statutes governing the President's budget.[8] OMB further argues that ASBL's FOIA request uses

11  the word "total" to modify the term "federal acquisition budget" and that when used as an

12  adjective, as it is in the request, it means "[o]f, relating to, or constituting the whole amount;

13  entire." Def.'s Opp'n 7 (quoting Am. Heritage Dictionary 1836 (5th ed. 2016)).[9] OMB asserts

14  that it conducted searches that were consistent with the foregoing definitions of the relevant terms,

15  as well as with the parties' pre-litigation communications about the request. According to OMB,

16  ASBL's current arguments about the adequacy of OMB's searches rest on an impermissible, mid-

17  litigation expansion of the original request to encompass actual spending, which is different from a

18  budget for spending.

19      The parties' communications from June 2020 through the October 2020 filing of ASBL's

20  complaint consistently referenced OMB's *budget* records without reference to actual spending.

21  *See* Lee Decl. Exs. B, C; Walsh Decl. Exs. 6, 7, 8; Compl. ¶¶ 1, 50 ("OMB must have records that

22

23  [8] Section 1104(b) requires the President to include "proposed appropriations information on
   personnel and other objects of expenditures" in the budget. Section 1105(a)(5) requires the budget
24  to include "estimated expenditures and proposed appropriations the President decides are
   necessary to support the Government . . ."

25  [9] OMB does not offer a definition for the term "acquisition" in its motion. It appears that the
26  parties did not discuss the meaning of that term until October 2021, when ASBL offered
   dictionary definitions of the term, including "[t]he general definition of 'acquisition' is 'the act of
27  acquiring something,' which can include both the 'acquisition of property' or the 'acquisition of
   knowledge.'" Brakebill Ex. 3 (quoting Merriam Webster Dictionary, https://www.merriam-
28  webster.com/dictionary/acquisition (last visited Oct. 6, 2021)). OMB does not dispute this
   definition or contend that it used a different meaning for the term.

United States District Court
Northern District of California

show the total federal acquisition budget for each fiscal year . . .").  In fact, in June 2020, ASBL emailed a "clarif[ication]" of its request: "we are seeking any and all documents indicating the acquisition budget for the Department of Defense (DoD) for Fiscal Year (FY) 2017, FY 2018, and FY 2019, as well as any and all documents indicating the percentage of the DoD's acquisition budget which goes to small businesses."  Lee Decl. Ex. C.  OMB contends that the DoD-specific information about the acquisition budget was a permissible clarifying interpretation of the original FOIA request, *see* Def.'s Opp'n 12 (citing *Sai v. Transportation Sec. Admin.*, 466 F. Supp. 3d 35, 52 (D.D.C. 2020), *as amended* (June 12, 2020) ("The clarification process provides requesters and agencies a means of clearing up ambiguities in a request.")), although it maintains that it also does not have responsive records to that version of the request.  Def.'s Opp'n 12 n.7.

Starting in March 2021, six months after ASBL filed the complaint, ASBL started to take a different approach to defining the scope of its request.  On March 12, 2021, OMB's counsel sent an email detailing the bases for OMB's response that it has no responsive records and referring ASBL to object class analyses, USAspending.gov, and DoD scorecards.  *See* Brakebill Decl. Ex. 1.  ASBL's March 15, 2021 response to OMB is internally inconsistent.  Counsel first objected to the data in the object class analyses and on USAspending.gov, writing, "both of these data sets reflect *actual acquisition spending, not an acquisition budget*," suggesting that ASBL continued to pursue only acquisition-related *budget* information.  Brakebill Decl. Ex. 2 (emphasis added).  However, ASBL counsel then posited a new interpretation of the request: "we note here that by 'total federal acquisitions budget,' ASBL was and is referring to 'the total value of all *prime contract awards* for' each referenced 'fiscal year,' the total figure needed to assess whether the government is meeting its small business contracting goals under the Small Business Act."  *Id.* (emphasis added). The reference to "awards" suggests that ASBL sought actual spending rather than budgeting data.  ASBL's counsel confirmed that position in October 2021, writing, "[w]e are shedding more light on our position that the OMB has information indicating *spending data* for all federal agencies . . . the data that the OMB receives from other agencies *regarding its spending* is encompassed within our FOIA request . . ."  Brakebill Decl. Ex. 3 (emphasis added).  ASBL counsel continued, "the definition of 'acquisition' includes both spending and allocation data, and

19

United States District Court
Northern District of California

1  this data includes spending for both goods and services . . ."  Confusingly, counsel concluded the

2  email by switching back to a budget-based rather than spending-based definition: "[i]n effect,

3  when ASBL is asking for documents 'indicating or containing the total federal acquisition budget'

4  for the years in question, it is asking for the *total federal budget*, which the OMB surely has for

5  the fiscal years in question."  *Id*. (emphasis added).

6        In its briefing, ASBL settles on the following spending-based formulation of its request:

7  "OMB should have searched for and disclosed any and all records 'indicating or containing'

8  information about federal government expenditures on goods or services for the fiscal years

9  identified in" its FOIA request.  Pl.'s Mot. 9.  Notably, ASBL's proposed order on the motion

10  provides yet another formulation, this time sweeping in both budget- and spending-based

11  language: "Defendant shall conduct a further search for records indicating or containing the total

12  federal acquisition budget for Fiscal Years 2017, 2018, and 2019, including all records indicating

13  or containing *information on all spending* on goods and services for such fiscal years, and all

14  records indicating or containing *information on the budget* for all spending on goods and services

15  for such fiscal years."  [*See* Docket No. 48-17 (emphasis added).]

16        In short, ASBL's interpretation of its FOIA request has been a moving target.  Its counsel's

17  communications to OMB about the request have been internally inconsistent and/or confusing.

18  ASBL does not address, explain, or otherwise attempt to harmonize the various positions it has

19  taken on the request.  As its arguments about the adequacy of OMB's search rest on the

20  interpretation set forth in its motion, i.e., that the request sought "information on spending on

21  goods and services for the federal government," *see* Pl.'s Mot. 9, the question is whether this is a

22  permissible interpretation of ASBL's original FOIA request.  The Ninth Circuit has held that

23  "federal agencies have a duty to construe FOIA records requests liberally" in order to "achieve the

24  core purpose of FOIA: allowing the public to find out 'what their government is up to.'"  *Yagman*

25  *v. Pompeo*, 868 F.3d 1075, 1079-80 (9th Cir. 2017) (emphasis removed) (quotation omitted).  At

26  the same time, "FOIA requires that federal agencies make records available only upon a request

27  which 'reasonably describes' the records sought."  *Id*. at 1081 (quoting *Marks v. United States*,

28  578 F.2d 261, 263 (9th Cir. 1978) (quoting 5 U.S.C. § 552(a)(3)).  "[B]road, sweeping requests

lacking specificity are not permissible." *Marks*, 578 F.2d at 263 (collecting cases).  As one court in this district has observed, "agencies should work with FOIA requesters to define the parameters of their requests," but "FOIA requesters must phrase their requests with sufficient particularity to enable the agency conducting the search to determine what records are being requested." *Elec. Frontier Found. v. Dep't of Com.*, 58 F. Supp. 3d 1008, 1020 (N.D. Cal. 2013), *vacated and remanded on other grounds sub nom. Elec. Frontier Found. v. U.S. Dep't of Com.*, 622 F. App'x 627 (9th Cir. 2015) (citing 5 U.S.C. § 552(a)(3)(A)).  "Litigation is not an appropriate forum for expanding the scope of a FOIA request or hashing out the scope of an ambiguous one."  *Id.*

ASBL's original request was for "the total federal acquisition budget" for specified years. Notwithstanding the fact that it later narrowed the request to encompass "the acquisition budget" for a single agency (DoD), it continuously maintained that it sought budget information until well after it filed its complaint, when it shifted the request to encompass "the total value of all prime contract awards" in March 2021 and took the position in October 2021 that the request included "spending for both goods and services."  The plain language of the request (and its subsequent clarification) unambiguously seeks only budget-related information, not spending information.  It also seeks "the total" budget for acquisitions, not records "indicating or containing *information about* the budget."  *See, e.g., DaVita Inc. v. U.S. Dep't of Health & Hum. Servs.*, No. CV 20-1798 (BAH), 2021 WL 980895, at *12–13 (D.D.C. Mar. 16, 2021) (holding that request for "access to the comments that were submitted on" proposed rule, "in particular, 'copies of all 36 comments' referenced in" final rule was unambiguous and rejecting the plaintiff's attempts to broaden the scope of the request during the conferral process "to include any agency document that refers to, characterizes, or incorporates the comments in any way"); *Ecological Rts. Found. v. U.S. Env't Prot. Agency*, No. CV 19-980 (BAH), 2021 WL 535725, at *9 (D.D.C. Feb. 13, 2021), *opinion vacated in part on reconsideration,* 541 F. Supp. 3d 34 (D.D.C. 2021) (holding that "Plaintiff's later representations concerning these records do not alter the limits imposed by the plain text of its Request.").  "Although FOIA requires an agency to produce all records 'reasonably described,' a FOIA plaintiff may not expand the scope of his request once his original request is made."  *Coss v. United States Dep't of Just.*, 98 F. Supp. 3d 28, 34 (D.D.C. 2015).

1    ASBL acknowledges OMB's argument that ASBL "impermissibly" expanded the scope of

2    the FOIA request.  It does not address OMB's authority or otherwise provide a fulsome response.

3    *See* Pl.'s Reply 8-9.  Instead, it contends that it "sought to clarify what it was seeking," and that

4    OMB was obligated "to inform the requester what information is needed and why the request is

5    otherwise deficient."  *Id.* at 9 (citing 5 C.F.R. § 1303.22(b)); *Yagman*, 868 F.3d at 1084).  ASBL's

6    position is not persuasive.  The cited regulation, 5 C.F.R. § 1303.22(b), states that "[i]f, after

7    receiving a [FOIA] request, OMB determines that the request does not reasonably describe the

8    records sought, OMB will inform the requester what additional information is needed and why the

9    request is otherwise insufficient."  The cited portion of *Yagman* states that "courts have held that

10   an agency has no right to resist disclosure because the request fails reasonably [to] describe

11   records unless it has first made a good faith attempt to assist the requester in satisfying that

12   requirement."  868 F.3d at 1084 (cleaned up).  These authorities are distinguishable, however,

13   because in this case OMB did not conclude that ASBL's request did not reasonably describe the

14   records sought.  Rather, OMB determined "that there is no specific total Federal acquisition

15   budget each year" and as a result, OMB had no responsive records.  Walsh Decl. Ex. 6.[10]

16   Turning to the adequacy of OMB's searches, ASBL's arguments primarily rest on what the

17   court has now determined to be an impermissibly expanded scope of the FOIA request.  As OMB

18   notes, ASBL's arguments "do not question the fundamental conclusion of OMB subject-matter

19   experts that OMB does not collect, track or maintain data on the total federal acquisition budgets

20   in the normal course of business."  Def.'s Opp'n 13.  Setting aside the issue of the scope of the

21   request, ASBL argues that OMB's "custodial inquiry" was inadequate because it "did not verify

22   the validity of its assessment with OMB's database of records" before issuing a response to the

23   request.  Pl.'s Mot. 7.  According to ASBL, "[t]his is the antithesis of an adequate search."  *Id.*

24   However, ASBL does not actually dispute that the individuals that Walsh consulted within OMB

25

---

26   [10] ASBL also addresses OMB's argument that ASBL narrowed its request to encompass only the
     DoD's acquisition budget, and disputes that it abandoned any part of the original request.  Pl.'s

27   Reply 9-10.  The court need not resolve this issue, because OMB contends that it "does not
     maintain or produce records relating to the DoD acquisition budget" for the same reasons that it

28   does not maintain acquisition budgets for any federal agencies.  *See* Def.'s Opp'n at 12 n.7; Def.'s
     Mot. 5.

United States District Court
Northern District of California

United States District Court
Northern District of California

1    are qualified to know whether the requested information exists and where it could be located.

2         ASBL also argues that when OMB finally conducted an electronic search, "the search was

3    strategically conducted in an effort to obtain as few responsive records as possible," since it

4    searched only for "federal acquisition budget," and not for the individual words "total," "federal,"

5    "acquisition," and "budget."  Pl.'s Mot. 7.  ASBL's argument has some appeal since OMB admits

6    that the term "total federal acquisitions budget" is not a "term of art" within OMB and lacks

7    "specific meaning to OMB."  Brakebill Decl. Ex. 1; *see also* Rowe Decl. ¶ 25 ("[t]here is no term

8    within OMB called 'total Federal acquisition budget[.]'").  However, that was the term used by

9    ASBL in its FOIA request, and ASBL did not provide any definitions of the component parts of

10   that term in its request until October 2021, nearly a year after it filed the lawsuit in this case.  *See*

11   Brakebill Decl. Ex. 3 (defining "acquisition").  ASBL now suggests that OMB should have

12   searched for the individual words "total," "federal," "acquisition," and "budget," Pl.'s Mot. 7, but

13   it does not explain how searches for such broad, general terms would reasonably yield responsive

14   records.

15        ASBL further challenges the adequacy of OMB's search by relying on the declaration of

16   its expert witness, Charles Tiefer, a university professor who states that he has served as an expert

17   witness on "government contracting" and has authored "a leading national casebook on

18   government contracting law."  Pl.'s Mot. 10 (citing Docket No. 48-2 (Tiefer Decl., Feb. 10, 2022)

19   ¶ 1).  OMB makes a number of objections to the statements in Tiefer's declaration, including that

20   they lack foundation and consist of impermissible conclusions; OMB notes that Tiefer does not

21   state that he has experience or background working at OMB.  *See* Def.'s Opp'n 18-19, 23-25.

22   ASBL responds to these objections in its reply.  *See* Pl.'s Reply 14-15.  The court need not resolve

23   these objections and denies them as moot.  Tiefer does not address the question of whether OMB

24   maintains records indicating or containing the total federal acquisition budget.  Nor does he

25   challenge any portion of Rowe's declaration detailing the budget process, OMB's role therein, and

26   Rowe's conclusion that "OMB does not track the total Federal acquisition budget and therefore

27   does not maintain the records that [ASBL] seeks."  Instead, Tiefer's declaration focuses on his

28   opinions about whether OMB possesses or has access to agency "spending reports on how the

budget, as legislated by Congress, has actually been executed." Tiefer Decl. ¶¶ 2, 3. As discussed above, ASBL's attempt to expand its FOIA request to encompass spending information is improper.

Finally, ASBL asserts that OMB has an obligation to "search[ ] for, or includ[e] as responsive, records that were created by outside agencies." Pl.'s Mot. 11. Relatedly, it contends that OMB "is required to contact other agencies itself to identify which records within the databases" on USAspending.gov "are responsive and should be disclosed." *Id*. at 13. Neither argument is persuasive. ASBL relies on *U.S. Department of Justice v. Tax Analysts*, 492 U.S. 136, 144 (1989), in which the Supreme Court addressed the issue of what constitutes an "agency record" within the meaning of FOIA. *See* Pl.'s Mot. 11. The Court held that "[t]o restrict the term 'agency records' to materials generated internally would frustrate Congress' desire to put within public reach the information available to an agency in its decision-making processes." 492 U.S. at 144. The Court set forth a two-part test: "[f]irst, an agency must either create or obtain the requested materials as a prerequisite to its becoming an 'agency record' within the meaning of the FOIA." *Id*. (cleaned up). "Second, the agency must be in control of the requested materials at the time the FOIA request is made," which "mean[s] that the materials have come into the agency's possession in the legitimate conduct of its official duties." *Id*. at 145. *Tax Analysts* does not support ASBL's position, where there has been no showing that OMB created, obtained, or possesses individual agencies' total acquisition budgets or any of the data that appears on USAspending.gov. *See* Field Decl. ¶ 11 (explaining that OMB does not own or control USAspending.gov and does not report, collect, or maintain its data).

As to ASBL's argument that OMB bears the burden of contacting other federal agencies to obtain information on ASBL's behalf, none of the cases it cites support its position. *See* Pl.'s Mot. 13-14. *Kenney v. U.S Department of Justice*, 603 F. Supp. 2d 184, 189 (D.D.C. 2009), involved the potential obligation of the requested agency to refer records in its possession to the agency that had originated the records "for review and processing" in response to the FOIA request. In *Schladetsch v. U.S. Department of H.U.D.*, No. 99-0175, 2000 WL 33372125, at *3 (D.D.C. Apr. 4, 2000), the court held that "[t]he programming necessary to conduct the search [of the agency's

24

1   own databases] is a search tool and not the creation of a new record." Similarly, in *Center for*

2   *Investigative Reporting v. United States Department of Justice*, 14 F.4th 916, 938 (9th Cir. 2021),

3   the Ninth Circuit held that "using a query to search for and extract a particular arrangement or

4   subset of data already maintained in an agency's database does not amount to the creation of a

5   new record." None of the circumstances in those cases are present here, where ASBL does not

6   refute OMB's evidence that it does not originate or maintain the data that appears on

7   USAspending.gov.

8       Ultimately, ASBL has not presented any evidence that overcomes the presumption of good

9   faith afforded to the declarations submitted by OMB. The Hardy, Rowe, and Field declarations

10  are reasonably detailed and non-conclusory and establish that OMB conducted an adequate search

11  that was reasonably calculated to uncover all relevant documents. OMB is thus entitled to

12  summary judgment on ASBL's FOIA claim.

**IV.   CONCLUSION**

14      For the foregoing reasons, OMB's motion for summary judgment is granted. ASBL's

15  motion for summary judgment is denied. The Clerk shall enter judgment for OMB and close the

16  file.

17      **IT IS SO ORDERED.**

18  Dated: September 28, 2022



Donna M. Ryu
United States Magistrate Judge

United States District Court
Northern District of California

25